40779. GRAYSON v. SAVANNAH NEWS-PRESS, INC.

DECIDED OCTOBER 29, 1964.

564

*Lewis & Javetz, Emanuel Lewis,* for plaintiff in error.

*Stephens & Gignilliat, Thomas H. Gignilliat,* contra.

FRANKUM, Judge. The substance of the plaintiff's complaint respecting these publications is that they were wilfully and maliciously false and untrue and not based on facts or on the records; that they injured the reputation of the plaintiff as a public official and as an individual, exposing him to public hatred, contempt and ridicule; that the purpose of the editorials "was to maliciously and falsely smear and destroy petitioner's record of nearly 25 years of .public service to the people of his county, district and state as well as to injure, defame and destroy the plaintiff's reputation as an individual" so as to destroy both public and private confidence in plaintiff as an official and as an individual; that said editorials as published by defendant were motivated solely by vindictiveness and a desire for revenge because of plaintiff having won a previous libel suit against defendant and that they made it appear to the public that petitioner as a public official has brought only harm to the people he represented and no benefits. Specifically the petition charged that the editorials were false and untrue in three particulars. First, it was alleged that the editorials charged the petitioner with failing to furnish state leadership "as well as to aid his home community." Petitioner alleged that this charge was false and in support of this allegation he set forth in the petition an enumeration of some 13 different laws and proposed constitutional amendments passed by the General Assembly which he alleged that he sponsored during his career as a representative in the State House of Representatives and as a State Senator. Secondly, he alleged that the charge made by the defendant in its editorial that "improvements made in our community were made despite Mr. Grayson and not due to his efforts" was knowingly false, libelous and maliciously defamatory. In support of this contention petitioner set forth a list of some 26 local laws and constitutional amendments alleged to have been enacted or introduced as a result of petitioner's efforts, which he alleged were of benefit to the people of the State of Georgia as well as to the local community of Chatham County. In addition thereto he alleged that over the years he had been instrumental in

bringing to Savannah and Chatham County certain enumerated industries and public facilities which were of benefit to the community.

Finally, petitioner alleged that the statement contained in the editorial that "Mr. Grayson's bill to limit the term of members of the Savannah District Authority was not in the best interest of our community," was knowingly, wilfully, vindictively and maliciously false and untrue and not founded on fact or record in that the bill therein referred to was not in truth and in fact his bill but was a bill sponsored in the House of Representatives by the three then representatives from Chatham County, a fact which could have been ascertained by the defendant if it had investigated the matter.

"A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule." *Code* § 105-701. Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. *Anderson v. Kennedy*, 47 Ga. App. 380, 382 (170 SE 555). At common law it was not necessary that a written or printed article charge one with the commission of a crime for it to be actionable. It was sufficient if it tended to bring the plaintiff into public hatred, contempt or ridicule. *Augusta Evening News v. Radford*, 91 Ga. 494, 495 (17 SE 612, 20 LRA 533, 44 ASR 53); *Horton v. Georgian Co.*, 175 Ga. 261 (1) (165 SE 443). This definition of libel is recognized and has been adopted by statute in this State. *Floyd v. Atlanta Newspapers, Inc.*, 102 Ga. App. 840, 841 (1) (117 SE2d 906). The distinction between pleading libel per se and pleading libel by use of words of covert meaning is that in the former no innuendo need be alleged, the words themselves, if in fact untrue, being a sufficient basis for the action, while in the latter, it is necessary that the pleader allege that a covert meaning attached to the words and that the words were understood by the readers (or at least by some of them) in the covert sense, which was untrue in fact. Clearly nothing contained in the editorials complained of in the petition in this case could be construed as charging the plaintiff with having committed a crime, nor was

he charged with any dishonest or immoral act. There is, therefore, no allegation contained in the petition and, in fact, no contention that the publications were libelous per se.

" 'A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. . . When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read.' Washington Post Co. v. Chaloner, 250 U. S. 290 (39 SC 448, 63 LE 987). This rule was quoted and applied in *Brandon v. Arkansas Fuel-Oil Co.*, 64 Ga. App. 139, 145 (12 SE2d 414). The language of an alleged libel 'is to be taken in its plain and natural meaning, and to be understood by courts and juries as other people would understand it, and according to the sense in which it appears to have been used and the ideas it is adapted to convey to those who read it.' Lancour v. Herald & Globe Association, 111 Vt. 371 (17 A2d 253, 132 ALR 486). 'The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, but cannot enlarge the meaning of words plainly expressed therein.' *Park v. Piedmont &c. Ins. Co.*, 51 Ga. 510; *Holmes v. Clisby*, 118 Ga. 820 (45 SE 684); *Spence v. Johnson*, 142 Ga. 267 (82 SE 646, AC 1916A, 1195); *Paschal v. Georgian Co.*, 43 Ga. App. 195 (158 SE 372). 'If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the judge at the trial will stop the case.' Odgers' Libel and Slander (5th Ed.), p. 116." *Aiken v. Constitution Pub. Co.*, 72 Ga. App. 250, 254 (33 SE2d 555).

There is no innuendo alleged in the petition in this case. There is nothing doubtful or ambiguous in the language of the publication and in fact the language is so plain and unambiguous that in our opinion no construction could be placed on the

language by the plaintiff which would support his contention that the editorial was libelous or defamatory. With but one exception, with which we shall presently deal, the editorials are merely expressions of the opinion entertained by the writer of the quality of the plaintiff's service as a public official. Whether or not petitioner's work and efforts as a public official and as a private individual did benefit his state and community, and whether or not improvements made in Chatham County had been made despite his efforts and whether or not the petitioner had been effective as a legislator were all matters with respect to which reasonable men might entertain differing opinions. The editors of the newspapers had the right to express in the editorial columns of the newspapers their opinions as to these matters even though their opinions might have been wholly at variance with the opinions of the great majority of the voters in the plaintiff's district. Merely to hold such contrary opinions and to express them, even to the extent of using persuasive arguments to sway voters of uncertain opinion to their views, did not constitute libel. Furthermore the mere allegation that the publication *was intended* to expose petitioner to contempt, hatred and ridicule was not the equivalent of an allegation that it had that effect. Even if the editorials were malicious, vindictive and made for the purpose of injuring petitioner this alone was not sufficient to constitute actionable libel since the editorials were not libelous per se and no special damages flowing therefrom were alleged. *Anderson v. Kennedy,* 47 Ga. App. 380, supra.

The only statement of fact contained in either editorial which is positively alleged in the petition to be false is the statement with reference to "Mr. Grayson's bill." Conceding that an inference that the petitioner sponsored or promoted the bill there referred to was permissible from a reading of this statement and that this was in fact untrue, standing alone, this would not constitute libel. "It is not libelous to charge a person with the doing of a thing which he may legally and properly do." *Garland v. State,* 211 Ga. 44, 48 (84 SE2d 9). Obviously the petitioner quite properly might have sponsored the bill, and for him to have done so would not have been illegal, dishonest or im-

moral. Whether or not sponsorship of the bill was "in the best interest of" Savannah and Chatham County was merely a matter of opinion, and the editor of the newspaper had a right to express his opinion as to the wisdom of such a measure.

It follows that the petition in this case failed to state a cause of action and the trial court did not err in sustaining the general demurrer and in dismissing it.

*Judgment affirmed. Felton, C. J., and Pannell, J., concur.*