### 72148. SOUTHLAND PUBLISHING COMPANY et al. v. BROGDON et al.
(347 SE2d 694)

BENHAM, Judge.

Appellees Brogdon and Williams, two veterinarians, filed a libel suit against appellants Southland Publishing Company and Gannett Company, Inc., for statements made about appellees in an article published in appellants' newspaper, The Times. Appellees alleged that the article, one in a series about The Telegraph, a weekly newspaper owned in part by appellees and published in White County, greatly injured their good names and reputations by linking them with Tilton Lamar Chester. According to the article, The Telegraph provides "news coverage of Tilton Lamar Chester, [an indicted drug trafficker], and others in the drug trade."

Appellants made a motion for summary judgment, which was denied by the trial court; they applied for and were granted leave to file an interlocutory appeal to determine whether the motion should have been granted. We affirm the trial court's decision to deny the motion.

Appellees claim that the entire article is libelous but focus on the following specific paragraphs:

"Bylines seldom appeared on such stories in The Telegraph, but the publication is owned and operated primarily *by people associated in one way or another with Chester*: . . . Dr. Roy Brogdon Jr. and Dr. Frank Williams, partners at the Cleveland Veterinary Hospital, located adjacent to The Telegraph, bought into the newspaper in June 1983.

"Each veterinarian owns a fourth interest in the. paper, with Brogdon serving as the corporation's vice-president and Williams its secretary-treasurer, and *they are responsible for payment of publishing expenses.*

"The veterinary hospital treats Chester's pets and farm animals and he says *one of his cats was a gift from Brogdon . . .*

"The Telegraph . . . has been *in financial trouble, for whatever reason, since the week the indictment against Chester was unsealed . . .*

"Since the indictment . . . the printing bill *consistently has been in arrears . . .*" (Emphasis supplied.)

Appellees cited the use of the emphasized phrases as being libelous by innuendo within the context of the article as a whole. Appellants contend that there is only one clear meaning that can be ascribed to the statements and that they are true.

"[I]n considering whether a writing is defamatory as a matter of law, we look not at the evidence of what the extrinsic circumstances were at the time indicated in the writing, but at what construction would be placed upon it by the average reader. [Cits.]" *Macon &c. Pub. Co. v. Elliott*, 165 Ga. App. 719, 721 (302 SE2d 692) (1983). Where words are capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, which of the two meanings will be attributed to it by those to whom it is addressed or by whom it may be read. *Reece v. Grissom*, 154 Ga. App. 194, 195 (267 SE2d 839) (1980). Our review of the record reveals that the article does not state that the only associations appellees had with Chester were the ones described, nor does it state that appellees have a practice of giving away cats and other homeless animals rather than destroying them. Moreover, the statements about the paper's account being in arrears were not completely accurate, since it was several weeks after the unsealing that the account fell into arrears, and the statement that appellees were responsible for the payment of publishing expenses was ambiguous since it·could be construed to mean that they were personally responsible, and they were not. These factors, combined with the overall tone of the article about The Telegraph's apparent interest in drug figures and Chester in particular, might lead the average reader to believe that appellees were in "one way or another" linked with Chester in some illicit capacity. In other words, the

article is capable of having more than one meaning. Accordingly, we cannot say as a matter of law that it is not defamatory. *Macon &c. Pub. Co. v. Elliott*, supra. Compare *Reece v. Grissom*, supra, in which the newspaper article about appellant Reece's son in no way connected or suggested a connection between appellant and the crime for which his son was arrested.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED JULY 10, 1986.

*James C. Rawls, V. Robert Denham, Jr.,* for appellants.
*Robert J. Reed,* for appellees.