## A91A1539. MEAD v. TRUE CITIZEN, INC.
(417 SE2d 16)

COOPER, Judge.

This is an appeal from the trial court's grant of summary judgment in favor of appellee.

On February 17, 1988, appellee, a local weekly newspaper, published an article on two local crimes in which appellant's name was incorrectly used in connection with one of the crimes. The article stated that appellant was occupying the apartment of a friend who was out of town and that appellant reported to investigating officers that Annie White ("White") had broken into the apartment by breaking a window with a rock. According to the article, appellant told police that she confronted White by pointing a pistol at her but White took the pistol away and struck appellant in the head. The article recited that White was arrested at the scene and charged with burglary. The article concluded by stating that the perpetrator of the other reported crime and appellant "remain in custody pending completion of investigations and the setting of bond in the cases." In fact, appellant was not the victim nor was she taken into custody. Appellant was the complainant whose only involvement in the case was that she called the police to report the incident when she heard an altercation in the apartment next to hers. The police report clearly shows appellant as the complainant, and appellant's name appears directly above the name of the person who is shown as the victim. The victim's name did not appear in the article. The reporter who wrote the story testified in a deposition that he reviewed the police report of the burglary, inadvertently looked at the wrong line and picked up appellant's name from the report as the victim of the crime. The reporter had no interviews with other persons about the incident but relied solely on the report. A day or two after the article was published, the reporter was notified by the chief of police of the error. The reporter then reviewed the report, discussed the situation with his editor and wrote a correction, which was published the following week in the next edition of the paper. Several months later, in the May 11 edition of the newspaper, another, more prominent, correction was printed which provided more detail than the first correction and which stated that the paper intended to set the record straight and apologized to appellant for the error. Appellant sued appellee for libel and the trial court, without making specific findings, granted appellee's motion for summary judgment.

Appellant raises as her sole enumeration of error the trial court's grant of summary judgment to appellee, contending that appellee's article was defamatory and constituted a libelous publication because it charged appellant with the commission of a crime. Appellant further argues that appellee is responsible for the negligent publication

of a defamation.

" 'A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule.' OCGA § 51-5-1. Libel per se consists of a charge that one is guilty of a crime, dishonesty, or immorality. [Cit.]" *Morrison v. Hayes*, 176 Ga. App. 128 (1) (335 SE2d 596) (1985). See also OCGA § 51-5-2 (newspaper libel). "An essential element of libel is that some type of defamatory statement must have been published. [Cit.] As a general rule, the question whether a particular publication is libelous, that is, whether the published statement was defamatory, is a question for the jury. [Cit.] However, if the statement is not ambiguous and can reasonably have but one interpretation, the question is one of law for the judge. The trial judge should read and construe the publication as a whole, and thereafter 'may find that it is not defamatory, that it is defamatory, or that it is ambiguous and the question is one for a jury.' [Cit.]" *Thomason v. Times-Journal*, 190 Ga. App. 601 (1) (379 SE2d 551) (1989). (Emphasis in original and punctuation omitted.) "[I]n considering whether a writing is defamatory as a matter of law, we look . . . at what construction would be placed upon it by the average reader. [Cits.]" *Macon Telegraph Publishing Co. v. Elliott*, 165 Ga. App. 719, 721 (1) (302 SE2d 692) (1983). In the case sub judice, the article does not, as a matter of law, impute the commission of a crime to appellant. See *Morrison*, supra at 129. Read as a whole, the article clearly indicates, although erroneously, that appellant was the victim of a crime who took actions in her own defense, not the perpetrator of the crime. The final paragraph, which states that appellant was in custody, does not indicate that she was arrested for any crime. The paragraph is most reasonably interpreted as either a printing mistake (i.e., White's name should have been included in the final paragraph rather than appellant's) or, when considered with the rest of the article, as indicating that appellant, as the victim, was also questioned by the police. The article, as a whole, does "not tend to injure appellant's reputation or expose her to 'public hatred, contempt, or ridicule.' [Cits.] The words of the [article] contain no hurtful innuendo regarding appellant's character or behavior and a reader's subjective decision to impute such innuendo to the [article] is not actionable as a defamation. [Cit.]" *Chance v. Munford, Inc.*, 178 Ga. App. 252, 253 (342 SE2d 746) (1986). The article " 'lacks the element of personal disgrace necessary for defamation.' [Cit.]" *Southard v. Forbes, Inc.*, 588 F2d 140, 145 (1979). Since the article was not defamatory, the trial court did not err in granting summary judgment to appellee.

Appellant's claim of negligence against appellee is based upon her assertion that appellee negligently published a defamation. Hav-

ing determined that the article was neither defamatory nor libelous, appellant's negligence claim fails. Compare *Thomason*, supra at 605 (Beasley, concurring specially). As a result of our conclusion herein, we need not reach appellee's erroneous assertions that the article was privileged and that the actual malice standard, as opposed to the negligence standard, applies.

*Judgment affirmed. Birdsong, P. J., and Pope, J., concur.*

DECIDED JANUARY 15, 1992 —
RECONSIDERATION DENIED MARCH 13, 1992 —

*Hawk, Hawk & Lyons, Victor C. Hawk,* for appellant.
*Glover & Blount, Percy J. Blount,* for appellee.