A00A0070. NIX v. COX ENTERPRISES, INC. et al.
(545 SE2d 319)

ELDRIDGE, Judge.

Franklin R. Nix, an attorney, sued Cox Enterprises, Inc. d/b/a The Atlanta Constitution, The Atlanta Journal, The Atlanta Journal-Constitution, and Rochelle Bozman for libel per se by listing him in two published articles on March 9, 1998, as one of seven examples of

criminal rogue lawyers, accusing him of attempting to solicit clients from another lawyer. The defendants placed his name immediately after the account of six lawyers charged with stealing their clients' money or convicted of felonies as examples of criminal rogue lawyers requiring State Bar discipline. The article also stated that these criminal rogue lawyers needed policing, were crooked, inept, arrogant, dishonest, or did shoddy work. The defendants stated that Nix had solicited another lawyer's clients, and, immediately after listing such examples of criminal rogue lawyers charged or convicted of crimes, they inserted two lines in the article, regarding litigation between Nix and another lawyer over communication with the other lawyer's client without disassociating language from the lawyers charged with criminal conduct. Accordingly, any reader might reasonably infer that the examples and statements about criminal rogue lawyers also included Nix as coming within the same description of characteristics as the criminal rogue lawyer listed before him. The relevant two lines of the article read as follows:

> Another attorney, Franklin R. Nix, was scolded publicly by Fulton Superior Court Judge Wendy L. Shoob when Nix solicited business by sending letters to disgruntled Olympic vendors urging them to drop their current attorney and bring their business to them. Nix invoked the name of defense attorney Bobby Lee Cook in the letter to convince the potential clients to jump ship, and the attorney whose clients received the letters, Louis Levenson, has sued Nix, alleging tortious interference with his contracts and defamation. Both lawsuits are pending in Fulton Superior Court.

Nix stated his complaint under three theories of liability: defamation; invasion of privacy; and intentional infliction of emotional distress. The defendants answered and filed a motion to dismiss, now treated as a motion for summary judgment. Both parties filed evidence in support of and opposition to the motion; the defendants attached copies of the litigation that they reported in their article about Nix, asserting privilege for reporting a judicial proceeding accurately. On July 31, 1998, the trial court entered an order dismissing plaintiff's complaint. On August 28, 1998, Nix appealed.

The Supreme Court of Georgia in *Cox Enterprises v. Nix*, 273 Ga. 152 (538 SE2d 449) (2000) reversed *Nix v. Cox Enterprises*, 242 Ga. App. 515 (529 SE2d 426) (2000) and held that, by not objecting and by filing his affidavit and evidence in opposition to Cox Enterprises' motion to dismiss, Nix waived notice and agreed to consideration of the motion as converted to a motion for summary judgment. The case was remanded to this Court to "address the merits of the appeal,

treating the asserted dismissal as a grant of summary judgment." (Citation and punctuation omitted.) *Cox Enterprises v. Nix*, supra. We adopt the opinion of the Supreme Court.

Thus, Nix's sole enumeration of error is that the trial court erred in granting Cox's motion for summary judgment. We reverse this judgment as to the issue of libel only and affirm the grant of summary judgment on the other theories of liability. Material issues of fact exist as to whether or not Cox Enterprises exercised reasonable care in publishing the article and made a "fair and honest report[ ] of court proceedings" under OCGA § 51-5-7 (6). In particular, although the report of the judicial proceeding was substantially accurate as to *Levenson v. Nix*, the question of whether the article was fair and honest was for the jury to determine in that the additional material did not come out in the reported judicial hearing and invidiously compared Nix's conduct to lawyers who had committed criminal conduct against their clients; this led the reader to reasonably infer that Nix's conduct had been criminal from the context of the entire article.

1. (a) Nix, in the lawsuit by Levenson, was alleged to have violated State Bar Rule 4-102 (d) Standard 6 (D) (1) by soliciting another lawyer's clients by contacting them in writing and seeking employment without the lawyer's permission:

> A lawyer shall not send, or knowingly permit to be sent, on behalf of himself, his firm, his partner, associate, or any other lawyer affiliated with him or his firm, a written communication to a prospective client for the purpose of obtaining professional employment if: (1) the written communication concerns a specific matter, and the lawyer knows or reasonably should know that the person is represented by a lawyer in the matter.

State Bar Rules as amended, 252 Ga. 571, 641 (1984). Such standard's violation is subject to disciplinary action by sanctions from admonition to disbarment. See Rule 4-102; 255 Ga. 861, 862 (1986). However, since 1984, when the rule was substantially amended, there has been no reported case of discipline of any lawyer under any of the multiple provisions of Standard 6, no less Standard 6 (D) (1). There exist in each Georgia Report many disciplinary actions under other standards against lawyers, including contact with a party represented by a lawyer. The primary focus of the State Bar disciplinary action has long been the protection of a lawyer's client from the misconduct of his or her lawyer. See 255 Ga. 857 et seq. Thus, the violation of this standard, while unethical, fails to have the gravity of the violation of other standards protecting clients from their lawyers' misconduct. As in *Levenson v. Nix*, supra, Standard 6 is designed to

protect the lawyer-client relationship from intermeddling by another lawyer seeking to obtain employment by taking the client. Such aggrieved lawyer has an adequate judicial remedy in both law and equity to protect himself as demonstrated by the reported case of *Levenson v. Nix.*

(b) In a similar standard to Standard 6, Standard 47 and Directory Rule (DR) 7-104 (A) (1) of the Georgia Code of Professional Responsibility prohibit contact by a lawyer representing a *party* from contacting *another party*, who is also represented by counsel, without prior written permission of the other party's counsel. *Sanifill of Ga. v. Roberts*, 232 Ga. App. 510, 511 (502 SE2d 343) (1998). This Standard 47 has been so narrowly construed that it is difficult to violate, indicating that it is not deemed so serious as to cause judicial action.

> [Standard 47] is designed to protect a represented party's right to effective representation of counsel by preventing adverse counsel from taking advantage of such party through undisclosed contact. The rule also promotes ethical behavior on the part of [lawyers]. In those cases where the parties are individuals, the rule has been easily enforced. When the named party is a corporation, the courts have struggled with the question of whether a corporate officer or employee, though not named as a defendant, should be considered a party. In State Bar of Georgia Formal Advisory Opinion 87-6 (1989), the Supreme Court of Georgia, adopting the consensus view of other jurisdictions, concluded that when a corporation is an opposing party in pending litigation, Standard 47 applies to an employee whose acts or omissions may be imputed to the corporation in relation to the subject matter of the case, as well as to an officer or other employee with authority to bind the corporation.

Id. at 511 (seeking to suppress a statement made in violation of this standard). However, the courts have held such standard does not apply to former employees who are not represented by the employer's counsel. See Supreme Court Formal Advisory Opinion 94-3; *Sanifill of Ga. v. Roberts*, supra at 512; see also *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 361 (6) (514 SE2d 691) (1999) (seeking to disqualify counsel for a violation of this standard). In fact, under the Federal Employers' Liability Act, contact with other railroad employees by an injured railroad worker's lawyer is authorized by federal statute, thus satisfying Standard 47, although neither the employer nor its counsel authorized such interview. *Norfolk Southern R. Co. v. Thompson*, 208 Ga. App. 240, 244-246 (4) (430 SE2d 371) (1993) (seeking to exclude from discovery work product statements

obtained in violation of this standard).

(c) Even the violation of the sacrosanct attorney-client confidentiality, which is the bedrock of the attorney's ethical duty to his client, does not rise to the substantial equivalent of criminal conduct. "There are no statutory criminal penalties visited upon an attorney who in violation of his ethical relation to his client divulges a confidential communication." *Cranford v. Cranford*, 120 Ga. App. 470, 474 (4) (170 SE2d 844) (1969).

> It is important to recognize, however, that behavior which might be unethical and might even subject an attorney to discipline by the State Bar does not necessarily rise to the level of criminal conduct. . . . It is therefore essential that we not confuse possibly unethical conduct with criminal conduct. While these types of conduct may be similar, they are not synonymous in every case. The possibly unethical conduct here does not rise to the level of criminal conduct within the [criminal] statute.

*Marcus v. State*, 249 Ga. 345, 346 (290 SE2d 470) (1982) (concealment of a material fact by trick, scheme, and device). Thus, any alleged ethical misconduct or unprofessional conduct of Nix is not comparable to criminal acts of the other lawyers mentioned in the article, although such conduct may violate disciplinary standards.

(d) "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel." OCGA § 51-5-2 (a).

> [A] negligence standard for private figure plaintiffs best preserves the balance between free speech interests and protection of the individual's reputation. . . . At trial of the negligence issue, the standard of conduct required of [news media] will be defined by reference to the procedures a reasonable publisher in [this party's] position would have employed prior to publishing. . . . [The publisher] will be held to the skill and experience normally exercised by members of their profession.

(Citations omitted.) *Triangle Publications v. Chumley*, 253 Ga. 179, 181 (317 SE2d 534) (1984); see also *Diamond v. American Family Corp.*, 186 Ga. App. 681, 683 (368 SE2d 350) (1988); *Minton v. Thomson Newspapers*, 175 Ga. App. 525, 527 (333 SE2d 913) (1985). Thus, it is a question of fact as to whether a publisher should exercise ordinary care to determine the difference between the violation of an ethical standard of the State Bar and violation of criminal law by a law-

yer for purposes of comparison before publishing the article making such comparison as to Nix.

Whether a publication is libelous or not must be determined from what construction would be placed upon it by the average reader after construing the entire article. *Macon Telegraph Publishing Co. v. Elliott*, 165 Ga. App. 719, 721 (1) (302 SE2d 692) (1983).

Imputing criminal conduct is actionable per se. "Libel per se consists of a charge that one is guilty of a crime, dishonesty, or immorality. . . . Whether or not words, which are untrue in fact, are actionable depends upon whether the covert meaning attributable to them is understood by the reader in the covert sense." (Citation omitted.) *Morrison v. Hayes*, 176 Ga. App. 128, 129 (1) (335 SE2d 596) (1985); see also *Mead v. True Citizen, Inc.*, 203 Ga. App. 361, 362 (417 SE2d 16) (1992); *Grayson v. Savannah News-Press*, 110 Ga. App. 561 (139 SE2d 347) (1964). Thus, making a comparison of a professional ethics violation and criminal conduct may be construed from the entire article by reasonable jurors as imputing criminal conduct to Nix as one of two possible meanings, i.e., the conduct was only unethical, or the conduct was both criminal as well as unethical. *Harcrow v. Struhar*, 236 Ga. App. 403 (511 SE2d 545) (1999); *Southland Publishing Co. v. Brogdon*, 179 Ga. App. 726, 727-728 (347 SE2d 694) (1986).

(e) The defendants assert that the allegedly libelous material constituted an expression of their opinion. While the article expressed an opinion that all the lawyers listed, including Nix, should be under some means of professional discipline for their conduct, such expression of opinion did not constitute the alleged libel and would not be actionable as a good faith opinion. See *Harcrow v. Struhar*, supra at 404; *Grayson v. Savannah News-Press*, supra at 568.

> There is no wholesale defamation exemption for anything that might be labeled opinion. To say otherwise would ignore the fact that expressions of opinion may often imply an assertion of objective fact. . . . The pivotal questions are whether [defendants'] statements can reasonably be interpreted as stating or implying defamatory facts about [Nix] and, if so, whether the defamatory assertions are capable of being proved false.

(Citation and punctuation omitted.) *Eidson v. Berry*, 202 Ga. App. 587-588 (415 SE2d 16) (1992); see also *Harcrow v. Struhar*, supra at 404. What a jury may find to be libelous is the inclusion of Nix's noncriminal conduct with that of other lawyers' criminal conduct in such fashion and without explanation of his noncriminal conduct as to lead the average reader to believe that the contrary was true. It is

not a statement of "opinion" to place Nix's noncriminal conduct in direct relation to conduct that is criminal.

(f) Since Nix's conduct was neither criminal nor an ethical violation upon which the Supreme Court of Georgia suspends or disbars lawyers, a jury issue exists as to whether or not the article, though accurately reporting the facts relating to the judicial proceeding under OCGA § 51-5-7 (6), was privileged because of the comparison it made by the inclusion of additional material, unrelated to the judicial proceeding, regarding lawyers engaged in criminal conduct, and Nix's conduct. Such expansion of the account of the judicial proceeding with such unrelated additional material invited the reasonable reader to make the logical inference that his conduct was also criminal. Thus, a jury issue arises as to whether this was a "fair and honest report[ ]," and whether Nix was said in the article to have engaged in criminal conduct where such inclusion in the comparison may cause the reader to infer criminal conduct and involves a statement beyond mere accurate reporting of the judicial proceeding in isolation when the article is viewed as a whole. *Horton v. Georgian Co.*, 175 Ga. 261, 273-274 (4) (165 SE 443) (1932); *Baskin v. Rogers*, 229 Ga. App. 250, 253 (4) (493 SE2d 728) (1997); *Blomberg v. Cox Enterprises*, 228 Ga. App. 178, 180-181 (1) (491 SE2d 430) (1997).

Where two constructions can be placed on the statements, one allowing the inference of criminal conduct or immoral conduct and the other not, this can be said to be ambiguous, requiring jury determination rather than a legal determination by the trial court. See *Mead v. True Citizen, Inc.*, supra at 362.

(g) OCGA § 51-5-7 (6) creates a conditional privilege based upon fair and accurate reporting of the facts of the judicial case and does not extend to commentary or inclusion of matters unrelated to the judicial proceeding. *Savannah News-Press v. Hartridge*, 110 Ga. App. 203, 209-210 (138 SE2d 173) (1964); *Lamb v. Fedderwitz*, 68 Ga. App. 233 (22 SE2d 657) (1942), aff'd, 195 Ga. 691 (25 SE2d 414) (1943); see also *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321, 328-330 (2), (3) (60 SE2d 802) (1950). The privilege is conditioned upon substantial accuracy as to all material matters reported in the article, as well as fairness through impartiality, i.e., neutral reportage. *Western Broadcasting of Augusta v. Wright*, 182 Ga. App. 359, 360 (2) (356 SE2d 53) (1987); *McCracken v. Gainesville Tribune*, 146 Ga. App. 274, 276 (3) (246 SE2d 360) (1978). The report must present neutrally and impartially all the material matters in the judicial proceeding in a fair manner without distortion, commentary, or additions that change the meaning. *Shiver v. Valdosta Press*, 82 Ga. App. 406, 412-413 (61 SE2d 221) (1950); see also *Lawton v. Ga. Television Co.*, 216 Ga. App. 768, 771 (1) (456 SE2d 274) (1995). "The reporter is not privileged under this Section to make additions of his own that

would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties." (Citation and punctuation omitted.) *Lawton v. Ga. Television Co.*, supra at 772. Where the article goes beyond the mere factual account of the judicial proceeding and adds additional matter from other unrelated judicial proceedings that may be deemed false when so joined, i.e., comparison to criminal conduct, the article may be found to be unfair and unprivileged by a jury when the article is considered as a whole. *Wood v. Constitution Publishing Co.*, 57 Ga. App. 123, 134 (194 SE 760) (1937), aff'd, 187 Ga. 377 (200 SE 131) (1938); *Atlanta Journal Co. v. Doyal*, supra; see also *Lawton v. Ga. Television Co.*, supra at 772; *Western Broadcasting of Augusta v. Wright*, supra at 360.

Fair and honest reports of the proceedings of judicial bodies or court proceedings are conditionally deemed to be privileged to the extent that it contained a report of judicial proceedings; however, this article was not limited to matters of this character, but contained additional statements tending to injure the reputation of the plaintiff and to expose him to public hatred and ridicule. "However, this privilege does not extend to reports which are not fair and honest[,] but which include additional matter in the way of statements or inferences of the publisher." *Horton v. Georgian Co.*, supra at 272. "As long as the facts are not misstated, distorted or arranged so as to convey a false and defamatory meaning, there is no liability for a somewhat less than complete report of the truth." (Citation and punctuation omitted.) *Morton v. Stewart*, 153 Ga. App. 636, 641 (2) (b) (266 SE2d 230) (1980); see also *Lawton v. Ga. Television Co.*, supra at 771. "[N]o privilege attached to such comments, [in] that the report was neither fair nor dispassionate." *Horton v. Georgian Co.*, supra at 273-274.

2. Nix asserted two other theories of liability, which the trial court found were barred as a matter of law: (a) invasion of privacy; and (b) intentional infliction of emotional distress.

(a) Matters of public concern when at issue and disclosed cannot give rise to liability for an invasion of privacy against the news media or anyone else. *Wilson v. Thurman*, 213 Ga. App. 656, 658 (2) (445 SE2d 811) (1994); *Cox Communications v. Lowe*, 173 Ga. App. 812, 813 (1) (328 SE2d 384) (1985); *Meyer v. Ledford*, 170 Ga. App. 245, 247 (316 SE2d 804) (1984).

(b) Publication of allegedly false statements cannot give rise to an action for intentional infliction of emotional distress, because the exclusive legal remedy where published works cause injury remains an action for defamation. *Munoz v. American Lawyer Media*, 236 Ga. App. 462, 465 (1) (b) (512 SE2d 347) (1999); *Tucker v. News Publishing Co.*, 197 Ga. App. 85, 87 (2) (397 SE2d 499) (1990); *Carter v. Wil-*

*lowrun Condo. Assn.*, 179 Ga. App. 257, 260 (5) (345 SE2d 924) (1986).

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Barnes, J., concur.*

DECIDED JANUARY 25, 2001 —

*Garland, Samuel & Loeb, Edward T. M. Garland, Nelson O. Tyrone III*, for appellant.

*Dow, Lohnes & Albertson, Peter C. Canfield, Thomas M. Clyde*, for appellees.