Linda HOFFMANN–PUGH, Plaintiff,

v.

Patricia RAMSEY and John Ramsey, Defendants.

NO. Civ.A.1:01–CV–630–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 5, 2002.

Evan M. Altman, Office of Evan M. Altman, Atlanta, GA, Darnay Hoffman, pro hac vice, Law Offices of Darnay Hoffman, New York, NY, for plaintiff.

James Clifton Rawls, Eric Schroeder, S. Derek Bauer, Powell Goldstein Frazer & Murphy, Atlanta, GA, L. Lin Wood, Jr., Office of L. Lin Wood, Atlanta, GA, for defendants.

## ORDER

THRASH, District Judge.

This is a diversity action for defamation. It is before the Court on the Defendants' Motion to Dismiss [Doc. 9]. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

## I. BACKGROUND

This case arises out of the notorious murder of six year old JonBenet Ramsey on December 26, 1996 in Boulder, Colorado. Defendants are the parents of JonBenet. The murder has been the subject of intense media attention, books, novels, film and television. No one has been charged, indicted or arrested in connection with the crime. The case remains unsolved and the investigation open. The incidents occurring on the date of the crime and the days that followed have also been the subject of several civil actions involving possible suspects and the Defendants.

Plaintiff Linda Hoffmann–Pugh was a housekeeper employed by the Defendants at the time of the murder. She was allegedly investigated by the police as a suspect based upon statements made to police by the Ramseys, but was later cleared. She testified as a prosecution witness before a Boulder, Colorado grand jury investigating the murder. The Defendants made certain statements in a book published in March, 2000, that Plaintiff alleges were deliberately calculated to create the false impression that Plaintiff was the murderer of their daughter. In the book, the Defendants recount the investigation into the murder of their daughter. A killer is not named in the book nor do Defendants claim to know the identity of the killer. The book does, however, identify seven possible leads Defendants contend should be further investigated. Plaintiff is not named as a suspect and she does not fit the profile of the killer which is set forth in the book. John and Patsy Ramsey, *The Death of Innocence: The Untold Story of JonBenet's Murder and How its Exploitation Compromised the Pursuit of Truth* 165–68, 199–205, 310–11, 361–374 (2000).[1]

Plaintiff's Complaint asserts causes of action for libel and slander. The allegations include claims that the Defendants made statements in the book, along with unidentified statements "on television and in the printed media," meant to create the impression that Plaintiff murdered JonBenet Ramsey. (Plaintiff's Complaint, ¶ 28, 29). Plaintiff alleges such statements are false and designed to direct attention away from Defendant Patricia Ramsey, who Plaintiff alleges is the actual murderer. (Plaintiff's Complaint, ¶ 24).

---

1. A copy of the hard cover edition of the book is attached as Exhibit A to the Defendants' Motion to Dismiss. The book in its entirety may be considered without converting the motion into a motion for summary judgment because the document is referred to in the Complaint and is central to or integral to the Plaintiff's claims. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281, n. 16 (11th Cir.1999); *Sturm v. Marriott Marquis Corp.*, 26 F.Supp.2d 1358, 1365 (N.D.Ga.1998) ("In considering a motion to dismiss, the Court may not normally rely on evidence outside of the pleadings. However, it may do so where the documents are undisputedly authentic and were specifically relied on in the plaintiff's complaint.").

In particular, Plaintiff alleges that the Defendants libeled her in the following passage from their book:

> The police ask Patsy these same questions about who might have been angry or acting strangely, and she begins to think about our cleaning lady. Linda Hoffman–Pugh had called Patsy a couple of days before Christmas, very distraught and in tears. Linda said her sister, who was also her landlord, was going to evict her if she didn't come up with the past-due rent. She asked Patsy if she could borrow twenty-five hundred dollars to cover it. Patsy had consoled Linda and agreed to lend her the money. In fact, Patsy had intended to leave the check for Linda on the kitchen counter before leaving for Michigan; Linda would let herself in the house and pick it up while we were gone for the holidays.
>
> Patsy remembers that her mother, Nedra Paugh, had said that Linda remarked to her at one time, "JonBenet is so pretty; aren't you afraid that someone might kidnap her?" Now these comments seem strangely menacing.
>
> Finding the phone number in her digital Rolodex, Patsy tells a police officer where Linda lives in Ft. Lupton, Colorado. Patsy later tells me she was thinking, *If it's Linda, it's okay, because she is a good, sweet person. She is just upset. She may need the money, but she won't hurt JonBenet.*
>
> The police tell us they will arrange for the Ft. Lupton police to drive by Linda's house to see if they notice anything unusual, but they don't want to alert anyone there that they are being watched.

*Death of Innocence, supra,* at 19–20 (emphasis in original). Plaintiff's claims and arguments revolve around this passage found in Defendants' book. Defendants have moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construes them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. DISCUSSION

Libel and slander are forms of defamation. "A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A § 51–5–1. "Slander or oral defamation consists in . . . [i]mputing to another a crime punishable by law . . . [or][u]ttering any disparaging words productive of special damages which flows naturally therefrom." O.C.G.A § 51–5–4. Claims for libel and slander must be brought within one year. O.C.G.A § 9–3–33. Georgia law sets out a distinct analyt-

ical framework defining the role of judge and jury in defamation cases:

> A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item ... should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read.

*Ledger–Enquirer Co. v. Brown*, 214 Ga. 422, 424, 105 S.E.2d 229 (1958) (quoting *Commercial Publishing Co. v. Smith*, 149 F. 704, 706 (6th Cir.1907)).

■■■ Georgia law recognizes two categories of libel: libel per se and libel per quod. "Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality" or injures one in their trade or profession:

> Defamatory words which are actionable per se are those which are recognized as injurious on their face—without the aid of extrinsic proof. However, if the defamatory character of their words [does] not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo.

*Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685, 688, 500 S.E.2d 1 (1998) (quoting *Macon Telegraph Pub. Co. v. Elliott*, 165 Ga.App. 719–723, 302 S.E.2d 692 (1983)). Thus, in Georgia, "words that are libelous per se do not need innuendo." *Id.* "Plain and unambiguous words that do not impute a crime cannot be enlarged and extended by innuendo." *Farrior v. H.J. Russell & Co.*, 45 F.Supp.2d 1358, 1362 (N.D.Ga.1999), (citing *Christian v. Ransom*, 52 Ga.App. 218, 219, 183 S.E. 89 (1935)). Unlike libel per se, actions alleging libel per quod must set forth and prove "special damages," or the action must be dismissed. *See Sumner v. First Union Nat'l Bank*, 200 Ga.App. 729, 730, 409 S.E.2d 212 (1991) (allegation that plaintiff is a delinquent debtor is not libelous per se, but is instead libelous per quod and requires allegation and proof of special damages).

■■■ "Whether or not words, which are untrue in fact, are actionable depends on whether the covert meaning attributable to them is understood by the reader in the covert sense." *Morrison v. Hayes*, 176 Ga.App. 128, 129, 335 S.E.2d 596 (1985). "In considering whether a writing is defamatory as a matter of law, we look at what construction would be placed upon it by the average reader." *Webster v. Wilkins*, 217 Ga.App. 194, 195, 456 S.E.2d 699 (1995) (quoting *Mead v. True Citizen, Inc.*, 203 Ga.App. 361, 362, 417 S.E.2d 16 (1992)). Thus, what the Plaintiff understood or the Defendants intended is irrelevant. "[C]ourts will not hunt for a strained construction in order to hold words being used as defamatory," *id.*, and a reader's subjective decision to impute a defamatory meaning is not actionable as libel per se. *Zarach*, 231 Ga.App. at 688, 500 S.E.2d 1. When the alleged statements "[are] not ambiguous and can reasonably have but one interpretation," the question of whether the statements are defamatory is for the Court. *Mead v. True Citizen, Inc.*, 203 Ga.App. 361, 362, 417 S.E.2d 16 (1992).

■■■■■ Defendants' first argument is that the statute of limitations bars all claims for defamation except those arising out of Defendants' book. The Complaint was filed on March 8, 2001. To the extent Plaintiff bases her libel and slander claims on alleged statements made before March 8, 2000, such claims are barred by the one-year statute of limitations for defamation. O.C.G.A § 9–3–33; *Lee v. Gore*, 221 Ga. App. 632, 635, 472 S.E.2d 164 (1996). Thus, Plaintiff has no cause of action for statements made by the Defendants at the time of the initial investigation of the murder unless the statements were repeated later in the book. Although Plaintiff's Complaint alleges that the Defendants made certain defamatory statements to the media upon which Plaintiff is suing, no where in the Complaint does Plaintiff identify any specific offending statements. In her response to the Motion to Dismiss, Plaintiff relies entirely upon statements in the book. Therefore, any claims for slander are either barred by the statute of limitations or are abandoned.

Defendants next argue that the book does not defame Plaintiff. They contend that the Court should hold as a matter of law that the passage cited above is not defamatory. Specifically, they argue that their book does not literally state Plaintiff is guilty of any crime, but at most merely asserts that she was acting strangely before the crime occurred. According to Defendants, this case is similar to the California case of *Forsher v. Bugliosi*, 26 Cal.3d 792, 163 Cal.Rptr. 628, 608 P.2d 716 (1980). That case centered around statements made in the book *Helter Skelter*, Vincent Bugliosi's best-selling book about the murders committed by the Manson family. *Id.* at 796, 163 Cal.Rptr. 628, 608 P.2d 716. The plaintiff in *Forsher* argued the book cast him as a member of the Manson family and the possible offender in the murder of the Manson family lawyer, Richard Hughes. *Id.* at 802, 163 Cal.Rptr. 628, 608 P.2d 716. The book recounted that the plaintiff, another woman, and Hughes had gone away for the weekend. When it began to rain, plaintiff and the woman decided to return home, but Hughes decided to stay at a campground until Sunday. Hughes was seen the next morning by three other youths. Therefore, when plaintiff took leave of Hughes he was alive and well. *Id.* at 796–99, 163 Cal.Rptr. 628, 608 P.2d 716. The book later identified plaintiff's female companion as a possible member of the Manson family, but made no reference to plaintiff in such a capacity. *Id.* at 803–04, 163 Cal.Rptr. 628, 608 P.2d 716. The plaintiff admitted that no single passage in the book, standing alone, was defamatory. Instead, he argued that the cumulative impact implied he was involved with the alleged murder of Hughes and an associate of the Manson Family. *Id.*

The California Supreme Court held that the book was not defamatory. *Id.* at 805, 163 Cal.Rptr. 628, 608 P.2d 716. It held that the plaintiff's conclusion could not reasonably be interpreted from the statements made in the book. *Id.* The only statement made about plaintiff was that he accompanied Mr. Hughes to the camping area and at Hughes' election, left him at the area. The book's "cast of characters" listed the Manson family members and associates, but the plaintiff's name appeared no where on this list. *Id.* Similarly, instead of placing blame for Hughes' death on plaintiff, the book suggested two suspects who while fugitives for some time, voluntarily surrendered to police five days after Hughes was last seen alive. *Id.* Importantly, the Court held that the "defamatory meaning which appellant urges that [the] court discern in the context of the whole book must be one that can be reasonably inferred ... Here, however the claimed defamatory nature of the book insofar as it relates to appellant is so obscure and attenuated as to be beyond the realm of reasonableness." *Id.*

■ The Plaintiff's claims in the instant case are similar to those of the plaintiff in *Forsher*. The Defendants' book identifies up to fifteen named or unnamed suspects who Defendants believe the Boulder police did not adequately investigate. Additionally, Defendants created a profile of the killer identified as a male, between the ages of 25 and 35 years old, who is an ex-convict or associates with hardened criminals, and who has access to a stun gun. *Death of Innocence, supra*, at 361–64. That the one passage Plaintiff cites as the entire basis for her defamation suit could be considered as imputing the kidnaping and murder of JonBenet Ramsey to Plaintiff, is an unreasonable interpretation in light of the entire publication.

To rebut Defendants' argument that the Defendants' statements are not defamatory, Plaintiff cites to the case of *Harcrow v. Struhar*, 236 Ga.App. 403, 511 S.E.2d 545 (1999). In that case, the libel defendant distributed a flyer that named the plaintiffs as the prime suspects in the shooting of defendant's cat. Although the defendant included a disclaimer in the writing that he was not implying that the plaintiffs were responsible for the act, the court still found the flyer defamatory. *Id.* at 403–04, 511 S.E.2d 545. The writing as a whole could be construed to imply that the plaintiffs shot defendant's cat and, were therefore, guilty of the crime of cruelty to animals. *Id.* at 404, 511 S.E.2d 545. However, Defendants in the instant case never named Plaintiff as a suspect, prime or otherwise. On the contrary, of the fifteen people identified as suspects, Plaintiff is missing from their ranks. *Harcrow* is simply not the present case. Similarly, Judge Carnes' case of *Wolf v. Ramsey*, 1:00–CV–1187–JEC is also inapposite. In that case, where Judge Carnes denied the Defendants' motion to dismiss, the Defendants had named Wolf as "on our suspect list." *Death of Innocence, su-pra*, 204–05. Here, the Defendants make clear that they do not even consider Plaintiff someone that the Boulder police should have investigated further.

■ Finally, Plaintiff argues that the book is defamatory because it neglects to include an express statement that Plaintiff was "cleared" by authorities and appeared as a grand jury witness. However, Georgia does not recognize "libel by omission." *Comer v. National Bank of Ga.*, 184 Ga.App. 867, 868, 363 S.E.2d 153 (1987) ("Appellant has cited no case and we are unfamiliar with any which provide that the failure to make a written statement has been upheld as the basis for a libel action."). Even considering these omitted facts, the Court does not find a defamatory meaning reasonably inferable therefrom. In sum, the only crime to which it could possibly be said that Defendants impute to Plaintiff is that of kidnaping. Mrs. Ramsey states that *"if* it was [Plaintiff]" then she feels better because Plaintiff is a good person and would not hurt JonBenet. *Death of Innocence, su-pra*, at 19–20. This statement refers to the time when the Ramseys thought JonBenet had only been kidnapped and not murdered. Once JonBenet's body was discovered, Mrs. Ramsey's statement ceases to carry any defamatory meaning. Because JonBenet was killed, Plaintiff could not be the killer, because she is a good, sweet person, incapable of hurting JonBenet. Defendants were not required to clarify this statement by the additional facts that the Boulder police eliminated Plaintiff as a suspect.

■ A significant portion of Defendants' argument for dismissal is that the statements in the book are non-actionable opinion. The Constitution does not offer wholesale protection for so-called "expressions of opinion" if those expressions imply assertions of objective fact. *Milkovich v. Lorain Journal*, 497 U.S. 1, 18, 110 S.Ct.

2695, 111 L.Ed.2d 1 (1990); *see also Eidson v. Berry*, 202 Ga.App. 587, 587–88, 415 S.E.2d 16 (1992) ("There is no wholesale defamation for anything that might be labeled opinion ... [and][t]o say otherwise would ignore the fact that expressions opinion may often imply an assertion of objective fact." (citations and punctuation omitted)). The requirement that, to be actionable, a statement of opinion must imply an assertion of objective facts about the plaintiff

> unquestionably excludes from defamation liability not only statements of rhetorical hyperbole ... but also statements clearly recognizable as pure opinion because their factual premises are revealed ... Both types of assertions have an identical impact on readers—neither reasonably appearing factual—and hence are protected equally under the principles espoused in *Milkovich.*

*Jaillett v. Georgia Television Co.*, 238 Ga. App. 885, 890, 520 S.E.2d 721 (1999) (quoting, *Phantom Touring v. Affiliated Publications*, 953 F.2d 724, 731 n. 13 (1st Cir. 1992)). If the facts underlying the speaker's statement are not unknown, but disclosed to the reader, then the statement reflects only on the speaker's interpretation of the facts. Whereas, in the present case, the facts upon which Mrs. Ramsey's statement are completely revealed, there are no undisclosed facts upon which an opinion is based. However, as the Restatement of Torts comments, if the facts upon which the opinion is based are defamatory, then Plaintiff may proceed with her defamation suit. In § 566, the Restatement states that:

> If the defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement—nor for the expression of opinion, so long as it does not reasonably indicate an assertion of

the existence of other, defamatory, facts that would justify the forming of the opinion.

Second Restatement of Torts, § 566, p. 175, Comment c. Therefore, the Court must turn to whether the facts revealed in the questionable passage are defamatory.

 Plaintiff contends that the underlying facts of Defendants' alleged opinion are defamatory making the statement actionable. Specifically, Plaintiff denies ever asking Mrs. Ramsey for money or that she was on the verge of eviction. Plaintiff also repudiates the statement that she remarked to Mrs. Ramsey's mother, "Jon-Benet is so pretty, aren't you afraid that someone might kidnap her?" These statements, however, are not defamatory. If these statements are untrue, as the Court must assume they are, they "do not injure the reputation of the person and exposing [her] to public hatred, contempt, or ridicule." O.C.G.A § 51–5–1. Just as in *Forsher*, these statements, even if false, do not cast Plaintiff in a false light. Therefore, if Mrs. Ramsey stated an opinion based on these facts, because they are not defamatory, the opinion remains unactionable. As such, Plaintiff may not proceed with a defamation claim based on these statements. The excerpt from the book relied upon by Plaintiff is not defamatory as it would be understood by the average reader, and any opinion of the Defendants that Plaintiff had been acting strangely before the murder was an opinion which is not actionable.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [Doc. 9] is GRANTED.

SO ORDERED.