[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13843

_____

D.C. Docket No. 4:08-cv-00023-WTM-GRS


DOUGLAS ECHOLS,

Plaintiff-Appellant,

versus

SPENCER LAWTON,
in his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 25, 2019)

Before TJOFLAT, WILLIAM PRYOR, and GILMAN,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

---

[*] Honorable Ronald L. Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This appeal requires us to decide whether a district attorney enjoys qualified immunity from a complaint that he defamed a former prisoner in retaliation for seeking legislative compensation for his wrongful convictions. After Douglas Echols served seven years of imprisonment for kidnapping and rape, a test revealed that his DNA did not match the semen recovered from the victim. Echols presented this evidence to Spencer Lawton, the local district attorney, who had a state crime lab confirm the test results. A Georgia trial court later vacated Echols's convictions. After Lawton declined to retry Echols, the trial court dismissed the indictment against him. A state legislator then introduced a bill to compensate Echols for his wrongful convictions. But Lawton wrote in opposition to the bill and allegedly falsely stated that Echols remained under indictment—a libel *per se*. *See Harcrow v. Struhar*, 511 S.E.2d 545, 546 (Ga. Ct. App. 1999). After the bill failed, Echols sued Lawton for violating his rights under the First and Fourteenth Amendments, 42 U.S.C. § 1983. The district court dismissed Echols's complaint based on qualified immunity. Although we conclude that Echols's complaint states a valid claim of retaliation under the First Amendment, we agree with the district court that Lawton enjoys qualified immunity because Echols's right was not clearly established when Lawton violated it. We affirm.

2

## I. BACKGROUND

In 1986, three unknown assailants kidnapped and raped Donna Givens in Savannah, Georgia. Although Douglas Echols professed his innocence, a jury convicted him of the kidnapping and rape of Givens. He was sentenced to 15 years of imprisonment.

After Echols served seven years of his sentence, a DNA test revealed that the semen recovered from Givens did not match Echols's DNA. Echols presented this evidence to Spencer Lawton, the district attorney for Chatham County, who also served in that role when Echols was convicted. Lawton ordered the state crime lab to conduct additional testing, which confirmed that the semen was not from Echols.

A Georgia trial court then vacated Echols's convictions and granted him a new trial. Instead of retrying Echols, the state entered a *nolle prosequi* on the charges of kidnapping and rape, and the trial court dismissed the indictment against him.

Four years later, after the Georgia Claims Advisory Board recommended compensation for Echols, a legislator in the Georgia General Assembly introduced a bill to compensate him with $1.6 million for his wrongful convictions. But before the General Assembly voted on the bill, Lawton sent a letter and memorandum to several legislators opposing Echols's compensation. Echols "was informed by the

3

legislature that [the bill] would not pass specifically due to . . . Lawton's correspondence." Indeed, the legislators with whom Lawton corresponded blocked the bill from reaching the floor of the General Assembly, and the bill failed.

Echols then filed a complaint against Lawton, which he later amended. In his amended complaint, Echols alleged that Lawton violated his rights under the First and Fourteenth Amendments, 42 U.S.C. § 1983, by providing "false information" and "intentionally misleading legal advice" to the legislators. Echols alleged that Lawton told the legislators that Echols's convictions "were proper and fitting, even though [his] conviction[s] had been vacated." Lawton also told the legislators not to presume Echols innocent of kidnapping and rape because the vacatur of his convictions did not establish his innocence. Lawton urged the legislators not to compensate Echols unless he proved his innocence. And Lawton told the legislators that Echols remained under indictment for kidnapping and rape even though the indictment had been dismissed four years earlier when the state entered a *nolle prosequi* on the charges. Echols complained that Lawton interfered with his freedom of speech and right to petition the government and retaliated against him for exercising those rights. And Echols complained that Lawton violated his right to due process of law by depriving him of a presumption of innocence.

4

The district court granted Lawton's motion to dismiss Echols's complaint. The district court ruled that Echols's complaint failed to state a claim under either the First or Fourteenth Amendments. It ruled that Lawton's letter did not amount to a threat, coercion, or intimidation, so Echols failed to state a claim of First Amendment retaliation. And it ruled that Echols failed to state a claim under the Due Process Clause of the Fourteenth Amendment because he failed to allege either a violation of a fundamental liberty or government conduct that shocks the conscience. The district court also ruled that Lawton enjoys qualified immunity because Echols's complaint failed to allege the violation of a right that was clearly established when Lawton sent his letter.

## II. STANDARD OF REVIEW

We review *de novo* a dismissal of a complaint for failure to state a claim. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008). We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We also review *de novo* a grant of qualified immunity. *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991).

5

### III. DISCUSSION

We divide our discussion in two parts. First, we explain that Lawton enjoys qualified immunity from the claim that he retaliated against Echols for exercising his rights under the First Amendment. Second, we explain that Lawton also enjoys qualified immunity from the claim that he violated Echols's right to due process of law because the general rubric of substantive due process cannot be used to govern a claim that is otherwise covered by the specific text of the First Amendment.

### A. *Lawton Enjoys Qualified Immunity from Echols's Claim of Retaliation Under the First Amendment.*

Lawton contends that he is entitled to qualified immunity from Echols's complaint of retaliation in violation of the First Amendment. "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). To obtain a dismissal based on qualified immunity, "a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Id.* If he was, the burden then shifts to the plaintiff to overcome the official's qualified immunity. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or

6

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Echols argues that Lawton acted outside the scope of his discretionary authority when he sent the letter to the legislators, but we disagree. To be sure, "[a] prosecutor's most basic duty is to prosecute cases in his jurisdiction on behalf of the State." *Mikko*, 857 F.3d at 1144. But we have explained "[r]elated to that duty," a prosecutor's discretionary authority also includes "communicat[ions] with other law enforcement agencies, officials, or employees about current or potential prosecutions." *Id.* Prosecutors must and do regularly communicate with legislators about a variety of issues related to their offices and the criminal justice system. Those issues may involve administrative and financial matters, public safety and criminal justice policies, and past, pending, or future prosecutions. Lawton's letter addressed the public fisc and both a past prosecution and a potential future prosecution, so his communication with legislators was clearly "within, or reasonably related to the outer perimeter of [his] discretionary duties." *Id.* (emphasis omitted) (citation omitted). Because Lawton satisfied his initial burden to invoke qualified immunity, the burden shifted to Echols.

We agree with the district court that Lawton enjoys qualified immunity from Echols's complaint, but we do so for a different reason. In contrast with the district court, we conclude that Echols's complaint states a valid claim that Lawton

7

violated a right protected by the First Amendment. But even so, that right was not clearly established when Lawton allegedly violated it.

1.  Echols Stated a Claim of Retaliation in Violation of the First Amendment.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or . . . the right . . . to petition the government for a redress of grievances." U.S. Const. Amend. I. The Amendment protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim for First Amendment retaliation, a plaintiff must allege that he engaged in protected speech, that the official's conduct adversely affected the protected speech, and that a causal connection exists between the speech and the official's retaliatory conduct. *Bailey*, 843 F.3d at 480–81. Only the second element is at issue in this appeal.

When reviewing an official's retaliatory conduct for adverse effect, we consider whether his alleged conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights," *id.* at 481, but we have acknowledged that special concerns arise when an official's "own First Amendment rights are implicated" in the commission of an alleged constitutional tort, *Dixon v. Burke Cty.*, 303 F.3d 1271, 1275 (11th Cir. 2002) (citing *Suarez Corp.*, 202 F.3d at 687). Because Lawton allegedly retaliated through his own

8

speech to members of the General Assembly, the district court considered whether his speech amounted to "a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse regulatory action will imminently follow," as several of our sister circuits have done in similar cases. *See, e.g.*, *Suarez Corp.*, 202 F.3d at 687 (collecting cases); *see also Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017); *Mulligan v. Nichols*, 835 F.3d 983, 990 (9th Cir. 2016); *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013); *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 70 (2d Cir. 1999); *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991). Our sister circuits have required that an official's retaliatory speech amount to a threat, coercion, or intimidation to reconcile two competing rights: a plaintiff's right to be free from retaliation for exercising his First Amendment rights and an official's right to engage in protected speech. *Suarez Corp.*, 202 F.3d at 687 n.13. But we need not resolve the difficult question whether that test strikes the right balance under the First Amendment in this appeal.

Echols argues that Lawton's speech presents an easier case because it amounted to defamation. Defamation is among the "historic and traditional categories of expression long familiar to the bar" that fall outside the protection of the First Amendment. *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality

9

opinion) (alteration adopted) (citation and internal quotation marks omitted). Echols maintains that Lawton's defamation of him raises no concerns about competing First Amendment rights.

Echols's argument that Lawton defamed him raises two questions. First, does Lawton's alleged speech qualify as defamation? Second, if so, does the First Amendment protect it?

To state a claim for defamation under Georgia law, a plaintiff must allege "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Mathis v. Cannon*, 573 S.E.2d 376, 380 (Ga. 2002) (quoting Restatement (Second) of Torts § 558 (Am. Law Inst. 1977)). A statement is not actionable as defamation when it conveys a pure opinion, *Gast v. Brittain*, 589 S.E.2d 63, 64 (Ga. 2003), or a true statement of fact, O.C.G.A. § 51-5-6. When we consider whether a statement is defamatory, we "read and construe the publication as a whole, and in the sense in which the readers to whom it is addressed would understand it." *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (citing *Mead v. True Citizen, Inc.*, 417 S.E.2d 16, 17 (Ga. Ct. App. 1992)).

Libel consists of the publication of defamatory statements in writing, O.C.G.A. § 51-5-1, and some written statements are libel *per se*. Libel *per se* is

10

actionable without proof of special harm. *Cottrell v. Smith*, 788 S.E.2d 772, 780–81 (Ga. 2016).

Libel *per se* includes "falsely stat[ing] . . . that a person has a criminal case pending against him." *Harcrow*, 511 S.E.2d at 546; *Witham v. Atlanta Journal*, 53 S.E. 105, 107 (Ga. 1906) (explaining that a statement that "in effect charges that there are criminal cases pending against [the plaintiff]" is libel *per se* (internal quotation marks omitted)); *see also Cottrell*, 788 S.E.2d at 780–81 (explaining that a false statement imputing a crime to the plaintiff is libel *per se*). To establish libel *per se*, the statement "must charge the commission of a specific crime punishable by law" by "giv[ing] the impression that the crime is actually being charged against the individual." *Cottrell*, 788 S.E.2d at 781.

Echols's complaint alleges facts that would constitute libel *per se*. It alleges that Lawton falsely stated in writing that Echols remained under indictment for kidnapping and rape. To be sure, some of Lawton's written statements convey either his opinion or true statements of fact, but the legislators to whom Lawton addressed his alleged writing would have understood it to state as a fact that Echols stood charged of kidnapping and rape. That alleged statement was false because a Georgia court had dismissed the indictment against Echols four years earlier. By falsely stating that Echols "ha[d] a criminal case pending against him," Lawton

11

allegedly committed libel *per se*. *Harcrow*, 511 S.E.2d at 546. And libel *per se* is actionable irrespective of special harm. *Cottrell*, 788 S.E.2d at 780–81.

Because Echols's complaint alleges that Lawton committed libel *per se*, we next consider whether the alleged defamation is nevertheless protected by the First Amendment. Defamation is unprotected when the speaker committed the tort with actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) (holding that a public official or public figure can recover damages for defamation on a matter of public concern only if he proves that the speaker acted with actual malice); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348–49 (1974) (holding that, although a private figure can recover damages for defamation if he proves the speaker acted negligently, he must prove actual malice to recover presumed or punitive damages if the statement was on a matter of public concern). Actual malice exists when the speaker has knowledge that the statement is false or when he speaks with reckless disregard for whether it is false. *Sullivan*, 376 U.S. at 280.

Even if we were to assume that Echols was a public figure or that Lawton spoke about a matter of public concern, Echols's complaint alleges that Lawton defamed him with actual malice. The complaint alleges that Lawton knew his statement that Echols remained under indictment was false because Lawton's office had dismissed the charges against him after he presented DNA evidence to Lawton and the state crime lab confirmed the results of the DNA test. Indeed, after

12

Lawton declined to retry Echols, a Georgia court dismissed the indictment against him. Because the complaint alleges that Lawton knew that Echols no longer remained under indictment for kidnapping and rape, Lawton's alleged defamatory statement was made with actual malice.

The First Amendment affords no protection to Lawton's alleged libel of Echols, so no "balance must be struck" here between the First Amendment rights of a plaintiff alleging retaliation for his speech and an official who allegedly retaliated through his own speech. *Suarez Corp.*, 202 F.3d at 687 n.13. We must instead determine only whether Lawton's alleged libel violated Echols's rights under the First Amendment.

We acknowledge that some of our sister circuits have held that defamation is not actionable as retaliation in violation of the First Amendment, but their decisions do not persuade us. These circuits have held that an official's defamatory speech by itself cannot constitute retaliation in violation of the First Amendment. *See id.* at 687 (holding that an official's speech, "even if defamatory," does not amount to retaliation unless it is a threat, coercion, or intimidation); *Colson*, 174 F.3d at 512 (holding that allegedly defamatory accusations, "while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence"); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994). The decisions of both the Fourth and the Fifth Circuits provide little explanation for

13

their reasoning, but they appear to rest on a misreading of *Paul v. Davis*, 424 U.S. 693 (1976), that originated in the Ninth Circuit, *see Suarez Corp.*, 202 F.3d at 687, 688 & n.14; *Colson*, 174 F.3d at 512, 514 & n.10; *Gini*, 40 F.3d at 1045. In *Gini*, the Ninth Circuit held that, under *Paul*, defamation is not actionable as retaliation absent harm to a more tangible interest than reputation. 40 F.3d at 1045. But in *Paul*, the Supreme Court addressed a distinct issue; it held that defamation standing alone cannot deprive a plaintiff of his right to *due process*. 424 U.S. at 712. And whether defamation may constitute a violation of procedural due process does not dictate whether it can constitute retaliation in violation of the First Amendment. "The fact that reputation, the interest that the law of defamation primarily protects, is not a form of constitutional liberty or property [under the Due Process Clause] doesn't mean that freedom of speech is not a constitutionally protected liberty—as of course it is." *Tierney v. Vahle*, 304 F.3d 734, 741 (7th Cir. 2002) (rejecting the Ninth Circuit's reasoning in *Gini*).

We reject the notion that the First Amendment protects an official's defamatory speech from a claim of retaliation. After a plaintiff engages in protected speech, an official may retaliate with physical or economic harm, but he may also retaliate with injurious speech. We agree with other circuits that sometimes "defamation inflicts sufficient harm on its victim to count as retaliation." *Id.*; *see also Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010); *Mattox*

14

*v. City of Forest Park*, 183 F.3d 515, 521 & n.3 (6th Cir. 1999). To decide whether defamation in a particular case is retaliatory, the Sixth and Eighth Circuits apply the same test of ordinary firmness as they would for any other claim of retaliation. *See Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005) ("[T]he appropriate formulation of the 'adverse action' prong in [this] case is whether the alleged defamation would deter [a person] of ordinary firmness [in the plaintiff's position] from continuing [to engage in protected speech]."); *see also Zutz*, 601 F.3d at 849 (applying the ordinary firmness test to retaliation based on an official's alleged defamation). We agree with this approach and decline to create special rules for claims of retaliation based on an official's defamation.

We next consider whether Lawton's alleged libel *per se* would have deterred a person of ordinary firmness from exercising his rights under the First Amendment. *See Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005); *see, e.g.*, *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998) (holding that, in response to a rape victim's criticism of the investigation, a sheriff's release of confidential and humiliating information about the victim's rape would likely deter a person of ordinary firmness from engaging in protected speech). An objective standard governs our inquiry. *Bailey*, 843 F.3d at 481. And "since there is no justification for harassing people for exercising their constitutional rights," the adverse effect "need not be great." *Bennett*, 423 F.3d at 1254 (citation omitted).

15

Lawton's alleged libel *per se* that Echols remained under indictment would likely deter a person of ordinary firmness from engaging in protected speech. When Echols exercised his freedom of speech and right to petition the government by seeking compensation for his wrongful convictions, Lawton allegedly retaliated by defaming him. Lawton allegedly misled legislators to believe, as a matter of fact, that Echols remained under indictment for kidnapping and rape—the very charges for which Echols had been wrongly convicted. Lawton, more than any other official, spoke with authority and credibility because he represented the state in its earlier prosecution of Echols for kidnapping and rape and continued to hold that office. But Lawton allegedly knew that the state had entered a *nolle prosequi* on these charges four years earlier. *See State v. Sheahan*, 456 S.E.2d 615, 617 (Ga. Ct. App. 1995) ("The entry of the *nolle prosequi* rendered the charge[s] dead . . . ."). If a district attorney defamed a former prisoner for seeking legislative compensation for his wrongful convictions and derailed that legislative effort, a person of ordinary firmness would likely be deterred from speaking again on that matter lest the prosecutor continue to tarnish his reputation or, worse, initiate a wrongful prosecution. So Echols's complaint states a claim of retaliation under the First Amendment.

16

## 2.  Lawton Did Not Violate a First Amendment Right That Was Clearly Established.

To defeat Lawton's qualified immunity, Echols must also prove that Lawton violated a constitutional right that "was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (quoting *al-Kidd*, 563 U.S. at 735). An official's conduct violates clearly established law when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (alterations adopted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). We consider the official's conduct in "the specific context of the case," not as "broad general proposition[s]." *Bailey*, 843 F.3d at 484; *see also al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). And we ask the "salient question . . . whether the state of law at the time of [an official's conduct] provided 'fair warning,'" to every reasonable official that the conduct clearly violates the Constitution. *Mikko*, 857 F.3d at 1146.

Echols can "demonstrate that the contours of the right were clearly established in one of three ways." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (alteration adopted) (citation and internal quotation marks omitted). First, he can point us to a "materially similar case [that] has already been decided." *Id.* (citation and quotation marks omitted). Second, he can point us to "a

17

broader, clearly established principle that should control the novel facts of the situation." *Id.* (alterations adopted). Third, "the conduct involved in the case may so obviously violate the [C]onstitution that prior case law is unnecessary." *Id.* at 1205 (alterations adopted). Echols's arguments fail under all of these approaches.

Echols contends that an assortment of decisions clearly established Lawton's violation of his rights, but he cites no controlling precedent that would have provided Lawton fair notice that his conduct would violate the First Amendment. Although "[w]e do not require a case directly on point, [some] existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. We look only to binding precedent at the time of the challenged conduct— that is, "the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state." *Bailey*, 843 F.3d at 483–84. And a clearly established violation of state law cannot put an official on notice that his conduct would also violate the Constitution because "section 1983 protects only against violations of federally protected rights." *Casnines v. Murchek*, 766 F.2d 1494, 1501 n.10 (11th Cir. 1985).

Echols relies either on precedents that are inapposite, *see, e.g.*, *United States v. Noriega*, 117 F.3d 1206, 1220 (11th Cir. 1997) (discussing a prosecutor's duty not to present false evidence during a judicial proceeding), or on decisions that are not precedential, *see, e.g.*, *Lucas v. Parish of Jefferson*, 999 F. Supp. 839 (E.D. La. 1998). And he relies on decisions from other jurisdictions, some of which even

18

postdate Lawton's alleged violation, *see, e.g.*, *Whitlock v. Brueggemann*, 682 F.3d 567, 581 (7th Cir. 2012). Although Lawton clearly would have had fair notice that his alleged writing constituted libel *per se* under state tort law, he would not have understood that his alleged libel would have violated the First Amendment. No controlling precedent put Lawton's alleged violation beyond debate.

Echols also relies on the broader principle "that the act of retaliation for the exercise of constitutional rights is clearly established as a violation," but this general principle is too broadly stated to control our inquiry. "[S]ome broad statements of principle in case law [that] are not tied to particularized facts . . . can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002). But the principle must establish with "obvious clarity" that "in the light of pre-existing law the unlawfulness [of the official's conduct is] apparent." *Id.* at 1353. True, "it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1256. But that general principle does not resolve with "obvious clarity" that defamation may constitute retaliation in violation of the First Amendment. *See also Reichle v. Howards*, 566 U.S. 658, 665 (2012) (rejecting the argument that "the general right to be free from retaliation for one's speech" clearly establishes a violation of the First Amendment).

19

Echols also fails to persuade us that Lawton's conduct "so obviously violate[d] the [C]onstitution that prior case law is unnecessary." *Loftus*, 690 F.3d at 1205. "This narrow category encompasses those situations where the official's conduct lies so obviously at the very core of what the relevant constitutional provision prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id.* (alteration adopted) (internal quotation marks omitted) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1257 (11th Cir. 2012)). "[I]n the absence of controlling precedent, cases decided outside this Circuit can buttress our view that the applicable law was *not* already clearly established" because "[w]e must not hold [officials] to a higher standard of legal knowledge than that displayed by the federal courts in reasonable and reasoned decisions." *Youmans v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010).

Lawton's conduct does not fall within this "narrow category." As we have explained, our sister circuits are divided over whether an official's defamatory speech is actionable as retaliation under the First Amendment. It has certainly not been obvious to the federal courts that an official's defamatory speech lies at the core of what the First Amendment prohibits. "[W]here judges thus disagree on a constitutional question," we cannot "expect that reasonable [officials] know more than reasonable judges about the law." *Id.* (citations and quotation marks omitted).

20

So we cannot say that it would have been "readily apparent" to every reasonable official that Lawton's alleged defamation violated the First Amendment. *Id.*

Critics of the doctrine of qualified immunity condemn "letting [an] official duck consequences for bad behavior." *Zadeh v. Robinson*, 902 F.3d 483, 498 (Willett, J., concurring dubitante) (5th Cir. 2018); William Baude, *Is Qualified Immunity Unlawful?*, 106 Calif. L. Rev. 45 (2018). And we too condemn Lawton's alleged conduct. But the Supreme Court has long ruled that qualified immunity protects a badly behaving official unless he had fair notice that his conduct would violate the Constitution, *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–91 (2018); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018), though at least one justice may harbor doubts, *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and in the judgment) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence."). "Because the Constitution's general provisions can be abstract," fair notice protects an official from "liab[ility] for conduct that [he could] reasonably believe[] was lawful." Aaron L. Nielson & Christopher J. Walker, *A Qualified Defense of Qualified Immunity*, 93 Notre Dame L. Rev. 1853, 1873 (2018). So even when an official behaves badly, "qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *al-Kidd*, 563 U.S. at 743.

21

Recall that the Constitution does not provide the only standard for redress for those wronged by public officials. For example, Lawton's alleged conduct could have been reviewed and sanctioned by the State Bar. *See* Ga. R. Prof'l Conduct 3.8(g), 8.4. Echols could have also filed a claim under state tort law against Lawton. *See Cottrell*, 788 S.E.2d at 780–81. But Echols chose to frame his complaint as a federal case alleging a violation of the Constitution, 42 U.S.C. § 1983.

Section 1983 is not a "font of tort law [that] converts [every] state law tort claim[] into [a] federal cause[] of action." *Waddell*, 329 F.3d at 1305 (citation and internal quotation marks omitted). When a plaintiff complains that a public official has violated the Constitution, qualified immunity shields the official from individual liability unless he had fair notice that his alleged conduct would violate "the supreme Law of the Land." U.S. Const. Art. VI. Because Lawton lacked that fair notice, he enjoys qualified immunity from Echols's claim of retaliation.

### B. Lawton Enjoys Qualified Immunity from Echols's Claim Under the Due Process Clause.

We also agree with the district court that Lawton enjoys qualified immunity from Echols's claim that Lawton violated his right to substantive due process, but we again do so for a different reason. The district court ruled that Echols failed to state a claim under the standards that govern substantive due process because Echols failed to allege either a violation of a fundamental liberty or government

22

conduct that shocks the conscience, but Echols's claim fails for a simpler reason: the text of the First Amendment sets the specific standard for it. As we have already explained, the First Amendment protects Echols's right to be free from retaliation by Lawton, a public official, for the exercise of Echols's right to speak. *See Bailey*, 843 F.3d at 480–81. And the Due Process Clause cannot be used to supplement that substantive right.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (alteration omitted) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). In the Bill of Rights, the "Framers sought to restrict the exercise of arbitrary authority by the [g]overnment in particular situations." *Albright*, 510 U.S. at 273 (plurality opinion). So when the Framers considered a matter and drafted an amendment to address it, *id.* at 274, a substantive-due-process analysis is inappropriate, *Lewis*, 523 U.S. at 843. We must "analyze[] [the claim] under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Lewis*, 523 U.S. at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

23

The district court's error was understandable. Confusion in jurisprudence that can be fairly described as untethered from the text of the Constitution—on its face, after all, "the Due Process Clause guarantees *no* substantive rights, but only (as it says) process," *United States v. Carlton*, 512 U.S. 26, 40 (1994) (Scalia, J., concurring in the judgment)—should not be surprising. For that reason, the Supreme Court has been "reluctant to expand the concept of substantive due process." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). So where, as here, a specific constitutional provision covers a plaintiff's claim, the requirements of that provision "are not to be supplemented through the device of 'substantive due process.'" *Albright*, 510 U.S. at 276 (Scalia, J., concurring).

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Lawton.

24

GILMAN, Circuit Judge, concurring:

I fully concur in the lead opinion's holding that Echols's complaint states a valid claim of retaliation under the First Amendment. Reluctantly, I also agree that Lawton is entitled to qualified immunity on this claim because the then-existing law in the Eleventh Circuit did not clearly establish that Lawton's egregious conduct violated Echols's constitutional rights. Several pertinent cases from other circuits hold that defamatory speech by a public official does not constitute First Amendment retaliation "in the absence of a threat, coercion, or intimidation," *see, e.g.*, *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000), and none of these actions were attributed to Lawton in Echols's complaint. And although authority exists to the contrary, *see, e.g.*, *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002) (concluding that "defamation inflicts sufficient harm on its victim to count as retaliation [and thus] be capable of deterring the exercise of free speech"), the Eleventh Circuit has not previously opined one way or the other on this issue. This lack of consensus supports the proposition that Lawton's defamatory statement that Echols was still under indictment for kidnapping and rape, as vindictive and unjustified as that statement appears to be, was not a clearly established violation of Echols's First Amendment rights.

I further agree with the lead opinion's conclusion that clear Supreme Court precedent prevents Echols from invoking the rubric of substantive due process as a

25

basis to hold Lawton accountable for a First Amendment violation.  But for this binding precedent, I would have concluded that Lawton's statement "shocks the conscience."  An official's conduct most likely shocks the conscience—and thus violates an individual's substantive-due-process rights—if the conduct was "intended to injure in some way unjustifiable by *any* government interest."  *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (emphasis added) (citation omitted).

As applied to the present case, there can be no doubt that Lawton's false statement to the Georgia legislature that Echols was still under indictment for kidnapping and rape was intended to injure Echols.  This leaves the question of what possible governmental interest justified Lawton in making that libelous statement.  I can think of none.  Nor has any such justification been articulated by either Lawton or the district court.  I suggest that this total silence is due to the fact that no such justification exists.

In any event, we are bound by Supreme Court precedent from providing relief to Echols on the basis of substantive due process.  My only comfort with this result is knowing that if another official in this circuit henceforth engages in conduct similar to Lawton's, he or she will not be entitled to hide behind the doctrine of qualified immunity.

26