[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11554
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-00137-JRH-BKE

JUSTIN STROLIS,

                                              Plaintiff-Appellant,

versus

LUCAS HEISE,

                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 3, 2020)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

    Justin Strolis appeals the district court's grant of summary judgment in favor

of Deputy Lucas Heise on his 42 U.S.C. § 1983 claim for malicious prosecution. He

contends the district court erred in granting qualified immunity because Deputy Heise lacked arguable probable cause to arrest him and fabricated evidence in the arrest warrant affidavit. After careful review of the record and the parties' briefs, we affirm.

## I

On the morning of June 12, 2015, Richmond County deputies responded to an incident on Ramsgate Drive in Augusta, Georgia, where at least ten vehicles had been broken into. D.E. 34 at 2. After arriving at the scene at 7:11 a.m., the deputies learned that several belongings had been stolen from the vehicles, including (1) a total of $250, (2) two driver's licenses, (3) a school ID card, (4) six credit or debit cards, (5) a purse, (6) a wallet, and (7) a Tag Heuer watch. *Id.* Deputy Heise was assigned to the investigation and, when reviewing the case files and reports, he discovered a residential security video that captured a male breaking into vehicles in the driveway. *Id.*

Deputy Heise soon learned that two of the credit cards that had been stolen were being used. One of the cards was used at a Raceway gas station and to pay for an account on Match.com. *Id.* The other card was used to pay for a Boost Mobile account. *Id.* The Match.com account was traced to a user named Joshua Dominguez. *Id.*

2

During the investigation, Deputy Heise subpoenaed Match.com and Sprint Communications, the owner of Boost Mobile, to obtain all records associated with the two stolen credit cards.  D.E. 34 at 3.  The subpoena yielded records that traced to transactions Mr. Dominguez made. *Id*.  A background check on Mr. Dominguez revealed several prior convictions, including a conviction for "entering an automobile with the intent to commit a theft" and convictions for "financial transaction card fraud."  *Id.*  The subpoenaed records also revealed that the IP address used to log into Mr. Dominguez's Match.com account came from the Masters Inn, a hotel in Augusta, Georgia.  *Id.*  The records from Boost Mobile indicated that between June 11, 2015, and July 1, 2015, Mr. Dominguez called or received calls from Mr. Strolis 124 times.  *Id.*

On July 1, 2015, Deputy Heise asked Mr. Strolis to come to the Richmond County Sheriff's Office for an interview. Mr. Strolis agreed.  *Id*. at 4.  During the interview, Mr. Strolis acknowledged that he was a friend of Mr. Dominguez.  He also stated that he met with Mr. Dominguez between June 10, 2015 and June 12, 2015, although he could not recall the exact date.  *Id.* at 4.  Mr. Strolis acknowledged that Mr. Dominguez called him to "hang out" while Mr. Dominguez was visiting Augusta from Atlanta. *Id.* Mr. Dominguez's mother had offered to pay for lodging at the Masters Inn, where Mr. Strolis stayed with Mr. Dominguez.  *Id.*  Mr. Strolis told Deputy Heise that on the day he spent time with Mr. Dominguez, the two men

3

went to a bar in downtown Augusta and then returned to the Masters Inn. *Id.* According to Mr. Strolis, Mr. Dominguez drove him home the next morning and they did not see each other again while Mr. Dominguez was in Augusta, but they spoke on the phone regularly. *Id.*

Although Mr. Strolis acknowledged all of these facts in the interview with Deputy Heise, he was uncertain about the exact dates he was with Mr. Dominguez. Mr. Strolis said he could not verify the dates he was with Mr. Dominguez because he had deleted that information from his phone. *Id.*

During the interview, Mr. Strolis adamantly denied any involvement with the vehicle break-ins. *Id.* He conceded, however, that he was aware Mr. Dominguez had broken into vehicles in the past and, specifically, that Mr. Dominguez had broken into vehicles near Ramsgate Drive seven years ago. *Id.* Because Mr. Strolis admitted to being with Mr. Dominguez around the date of the break-ins, was unable to confirm the dates he was with Mr. Dominguez, had communicated frequently on the phone with Mr. Dominguez during and after the break-ins, and had deleted all of the data from his phone, Deputy Heise suspected Mr. Strolis was involved in the break-ins. *Id.*

Deputy Heise continued his investigation by going to the Masters Inn to verify that Mr. Strolis and Mr. Dominguez stayed there during the relevant dates associated with the break-ins. *Id.* at 6. The hotel's personnel disclosed that Mr. Dominguez's

4

mother had rented a room from June 10, 2015 to June 12, 2015. *Id.* Because the Masters Inn only held video footage for ten days, it no longer had the footage from those dates. *Id.* Verizon Wireless was unable to provide location information from Mr. Strolis' phone because he had deleted his data log from Verizon's servers. *Id.* at 6-7.

On July 7, 2015, after learning that Mr. Dominguez was detained at Gwinnett County Jail in Duluth, Georgia, for charges unrelated to the break-ins, Deputy Heise interviewed him along with Gwinnett County Officer Michael Hardin. *Id.* at 7. Mr. Dominguez promptly confessed to the vehicle break-ins on Ramsgate Drive and acknowledged it was possible that Mr. Strolis was with him during the break-ins. *Id.* When asked whether Mr. Strolis had broken into any vehicles, Mr. Dominguez responded that Mr. Strolis "was working on the other side of the street." D.E. 34 at 7. Deputy Heise also asked Mr. Dominguez whether Mr. Strolis was with him for the entire criminal incident on Ramsgate Drive and Mr. Dominguez replied that, "[Mr. Strolis] went back to the car for about two hours afterwards. Said he was tired." *Id.*

Deputy Heise solicited another interview with Mr. Strolis on July 8, 2015, but Mr. Strolis declined. *Id.* The next day, Deputy Heise applied for and received an arrest warrant for Mr. Strolis on the charge of entering an automobile to commit a theft and Mr. Strolis was arrested that day. *Id.* at 8. The state later moved for and

received a *nolle prosequi* order for Mr. Strolis because of insufficient evidence to prove his guilt beyond a reasonable doubt. *Id.*

On August 3, 2018, Mr. Strolis filed a complaint in state court in part alleging malicious prosecution under 42 U.S.C. § 1983. D.E. 1-1 at 3. Deputy Heise removed the case to federal court. D.E. 2. Deputy Heise later moved for summary judgment, which the district court granted as to the federal claim for malicious prosecution on the grounds of qualified immunity. The district court remanded the remaining claim for malicious prosecution under Georgia law to state court. D.E. 34 at 9.

## II

"We review the denial of summary judgment based on qualified immunity *de novo*, viewing the facts in the light most favorable to the nonmovant." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (quoting *Hunter v. City of Leeds*, 941 F.3d 1265, 1274 n.8 (11th Cir. 2019)). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, we 'view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant.'" *Skop v. City of Atlanta*, 485 F.3d 1130, 1136

(11th Cir. 2007) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)).

## III

Deputy Heise contends he is entitled to qualified immunity on Mr. Strolis' claim of malicious prosecution. "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (internal quotation marks omitted). To receive qualified immunity, the officer "bears the initial burden to prove that he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). Officers who act within their discretionary authority are "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Mr. Strolis does not dispute that Deputy Heise acted within his discretionary authority, so he bears the burden of proving that Deputy Heise is not entitled to qualified immunity.

Mr. Strolis argues that Deputy Heise violated his clearly established right under the Fourth Amendment to be free from an unreasonable seizure as a result of a malicious prosecution. *See Whiting v. Traylor*, 85 F.3d 581, 583-84 (11th Cir.

7

1996). For this claim, he must prove both "a violation of [his] Fourth Amendment right to be free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal quotation marks omitted). Under the common-law elements of malicious prosecution, Mr. Strolis must prove that Deputy Heise "instituted or continued" a criminal prosecution against him, "with malice and without probable cause," that terminated in his favor and caused damage to him. *Id.* (internal quotation marks omitted).

Mr. Strolis contends that the district court erred in granting qualified immunity because Deputy Heise lacked arguable probable cause to arrest him and because the warrant affidavit contained overstatements and mischaracterizations. We disagree.

A police officer who applies for an arrest warrant can be liable for malicious prosecution if he should have known that his application "failed to establish probable cause," or if he made statements or omissions in his application that were material and "perjurious or recklessly false." *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (quoting *Malley v. Briggs,* 475 U.S. 335, 345 (1986)) (citing *Franks v. Delaware,* 438 U.S. 154, 156, 165-71 (1978)). "Concomitantly, a police officer cannot be liable for malicious prosecution if the arrest warrant was supported by

probable cause." *Black*, 811 F.3d at 1267 (citing *Wood v. Kesler,* 323 F.3d 872, 882 (11th Cir. 2003)).

In *Franks v. Delaware*, 438 U.S. 154, 155 (1978), the Supreme Court explained that a warrant is constitutionally flawed if it contains a "false statement [made] knowingly and intentionally, or with reckless disregard for the truth." The Court made clear that when supporting a warrant, the statements need not actually be true; instead, a showing "that the information put forth is believed or appropriately accepted by the affiant as true" will suffice. *See id.* at 164-65.

We have ruled that uncorroborated statements from admitted co-conspirators and accomplices is sufficient to support a finding of probable cause as long as the testimony "is not on its face incredible or otherwise insubstantial." *Craig v. Singletary*, 127 F.3d 1030, 1044 (11th Cir. 1997) (en banc); *see also Damali v. City of East Point*, 766 F. App'x 825, 827 (11th Cir. 2019) ("[O]ur longstanding circuit precedent is clear that uncorroborated testimony from an admitted accomplice is sufficient to support probable cause, 'unless it is incredible or contradicts known facts to such an extent no reasonable officer would believe it.'") (quoting *Craig*, 127 F.3d at 1045).

Because the existence of valid probable cause defeats a claim of malicious prosecution, we consider whether probable cause supported Deputy Heise's affidavit for a warrant to arrest Mr. Strolis. *See Marx v. Gumbinner*, 905 F.2d 1503, 1506

(11th Cir. 1990); *see also Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002)).

After carefully reviewing the record, we conclude that Deputy Heise had arguable probable cause to believe Mr. Strolis was involved in the vehicle break-ins. First, during his interview, Mr. Dominguez admitted to breaking into the vehicles and stated Mr. Strolis was with him and was operating on the other side of the street. *Id.* at 7. And Mr. Strolis' own testimony—while somewhat equivocal—placed the two of them together on the morning of June 12, 2015, when the vehicle break-ins occurred. *Id.* at 31. Based on the surrounding circumstances and facts Deputy Heise had gathered from his investigation, Mr. Dominguez's revelation to Deputy Heise that Mr. Strolis was involved in the break-ins was not implausible, nor was it otherwise contradicted by known facts. *Id.* at 31-32.

In addition to Mr. Dominguez's incriminating statements about Mr. Strolis, independent evidence confirmed the reliability of Mr. Dominguez's confession, including Mr. Strolis' own testimony that he may have been with Mr. Dominguez on the date of the vehicle break-ins. D.E. 34 at 4. Furthermore, Verizon Wireless' subpoenaed records showed that Mr. Strolis' location information was not available because Mr. Strolis had deleted the data from his cell phone. *Id.* at 6-7. Finally, the phone records Deputy Heise reviewed showed that Mr. Strolis and Mr. Dominguez were in frequent communication around the dates of the vehicle break-ins. *Id.* at 27. These facts confirmed many of the details of Mr. Dominguez's story and indicate

10

that Deputy Heise had information beyond Mr. Dominguez's testimony to support his belief that there was probable cause to arrest Mr. Strolis in connection with the break-ins. *Id.*

Under this Circuit's binding precedent, the identification of Mr. Strolis by Mr. Dominguez—who was a known participant in the vehicle break-ins—was sufficient to establish probable cause and support Deputy Heise's affidavit for Mr. Strolis' arrest. *See Craig*, 127 F.3d at 1045-46 ("[U]nless it is incredible or contradicts known facts to such an extent no reasonable officer would believe it, a co-defendant's confession that he and the suspect committed the crime can supply probable cause to arrest the suspect."); *see also Damali*, 766 F. App'x at 827 ("Under [*Craig*], the identification of Mr. Damali by Ms. Sypho—who was a known participant in the Family Dollar Store robbery—was sufficient to establish probable cause and support Detective Gray's affidavit for Mr. Damali's arrest.").

As to Mr. Strolis' argument that Deputy Heise either fabricated evidence or made overstatements in the warrant affidavit that would prevent a magistrate from finding probable cause, this too lacks support in the record. The warrant affidavit submitted by Deputy Heise states that, "[w]hile co-defendant Joshua Dominguez was entering said vehicle, [Justin Strolis] entered other vehicles, without authority, on the other side of the street in the Ramsgate neighborhood." Appellee's brief at 21. This statement, rather than constituting a mischaracterization or an

11

overstatement, instead refers directly to portions of Mr. Dominguez's interview, during which Mr. Dominguez stated that Mr. Strolis was "working the other side of the street." D.E. 34 at 7. Although Deputy Heise used different language than Mr. Dominguez, it is clear Mr. Dominguez incriminated Mr. Strolis in the break-ins during his interview with Deputy Heise. This testimony, coupled with the information gathered during Deputy Heise's independent investigation, amounted to probable cause sufficient to support the arrest warrant.

Because we conclude Deputy Heise had probable cause to believe Mr. Strolis was involved in criminal activity and Deputy Heise did not fabricate evidence included in his warrant affidavit, we conclude that the district court properly granted summary judgment in favor of Deputy Heise based on qualified immunity.

## IV

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Deputy Heise.

**AFFIRMED.**