[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14070

_____

TAMMI TAYLOR,

Plaintiff-Appellee,

*versus*

PAM PALMER,
individually and in her official capacity as
Mayor of the City of Adamsville,

Defendant-Appellant,

THE CITY OF ADAMSVILLE, ALABAMA, THE,

Defendant.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:18-cv-01608-MHH

———————————————

Before BRANCH and GRANT, Circuit Judges, and HINKLE,* District Judge

PER CURIAM:

The mayor of Adamsville, Alabama blocked a frequent critic from posting comments on the city's Facebook page for about a week in 2016. The critic sued the mayor for damages, asserting the block violated the critic's First Amendment right to freedom of speech. The mayor moved for summary judgment based in relevant part on qualified immunity. The district court concluded that the mayor was not entitled to qualified immunity and denied the motion as to the claims against the mayor in her individual capacity. This is the mayor's appeal of that ruling.[1] The controlling

---

* Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

[1] The mayor also argues that she is "entitled to qualified immunity and summary judgment as to . . . [the critic's] claims against her in her individual capacity for . . . First Amendment retaliation." To the extent the critic's retaliation claim is based on a state court lawsuit filed against her, the district court

question is whether it was clearly established at that time that blocking the critic violated the First Amendment. We hold it was not.

## I

A district court's denial of a summary-judgment motion based on qualified immunity is immediately appealable when, as here, it turns on an issue of law. *See, e.g.*, *Perez v. Suszczynski*, 809 F.3d 1213, 1216–17 (11th Cir. 2016); *Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000). We review de novo the denial of such a motion. *See, e.g.*, *Carter v. Butts Cnty.*, 821 F.3d 1310, 1318 (11th Cir. 2016). Like the district court, we must resolve all genuine factual disputes and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* We set out the facts that way.

## II

Pam Palmer became the mayor of Adamsville in 2008. Tammi Taylor became an outspoken critic of both the mayor and the city in 2009. The record would support a finding that through the ensuing years, Ms. Taylor was the city's most outspoken critic.

One place where Ms. Taylor voiced her criticism was on the city's Facebook page. The city used the page to provide information to members of the public. Members of the public could, in

---

has already granted the mayor's motion. And to the extent the critic's retaliation claim is based on the mayor blocking her from the city's Facebook page, we conclude that the mayor is entitled to qualified immunity for the reasons explained in this opinion.

turn, post comments on the page. Any such comments were viewable by those accessing the page, including other members of the public.

The city had a social-media policy that applied to the Facebook page. In the policy, the city asserted an interest in deciding what could be posted on the page. The policy said the city would remove posts that were random, unintelligible, profane, obscene, violent, pornographic, discriminatory, or defamatory, as well as threats, comments in support of or in opposition to a political campaign, and other content that violated the law. The policy said the city reserved the right to deny access to any individual who violated the policy.

The mayor was an administrator—perhaps the primary administrator—of the page. In December 2016, the mayor blocked Ms. Taylor from posting on the page. This record would support a finding that the mayor took this action because she disagreed with the viewpoints expressed in Ms. Taylor's posts. After imposing the block, the mayor called an attorney at the Alabama League of Municipalities, who told the mayor she should remove the block. The mayor removed the block roughly a week after it was put in place.

Ms. Taylor says she still cannot post on the city's page from the account that was blocked. But the record suggests that the problem is not the result of any continuing effort by the mayor to block Ms. Taylor.

### III

21-14070          Opinion of the Court          5

Ms. Taylor filed this lawsuit against the city and the mayor in October 2018. Ms. Taylor complained about the Facebook block as well as other alleged mistreatment not at issue here. Ms. Taylor asserted, among other things, that the Facebook block violated the First Amendment. She sought an award of damages under 42 U.S.C. § 1983. Following discovery, the city and the mayor moved for summary judgment. The mayor relied in part on qualified immunity. The district court concluded that the mayor was not entitled to qualified immunity as a matter of law and denied the motion as to the claims against the mayor in her individual capacity. This is the mayor's appeal.

## IV

Qualified immunity applies to damages claims against public officers and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A long and ever-growing series of cases addresses this principle. *See, e.g., Carroll v. Carman*, 574 U.S. 13 (2014); *Hope v. Pelzer*, 536 U.S. 730 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Of critical importance here, a public officer may be held individually liable only if the officer's conduct violated "clearly established law."[2] *See, e.g., Echols v. Lawton*, 913 F.3d 1313, 1323 (11th Cir. 2019).

---

[2] Both parties agree that the mayor was acting within the scope of her discretionary authority as the mayor when controlling the city's Facebook page. *See*

"An official's conduct violates clearly established law when 'the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). An official's conduct must be considered in the "specific context of the case," not based only on "broad general proposition[s]." *Id.* at 1323–24 (quoting *Bailey v. Wheeler*, 843 F.3d 473, 484 (11th Cir. 2016)). In assessing whether an official's conduct violated clearly established law, the "salient question" is whether the state of the law at the time of the conduct provided fair warning to "every reasonable official" that the conduct violated the Constitution. *Id.* at 1324 (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017)).

A plaintiff can demonstrate a right was clearly established in three ways. *Id.* (citing *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). First, the law can be clearly established by a factually similar case from the United States Supreme Court, the

---

*Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) ("To obtain a dismissal based on qualified immunity, a government official must first establish that [s]he was acting within the scope of [her] discretionary authority when the alleged wrongful act occurred." (quotation omitted)). Thus, the burden shifted to Ms. Taylor to overcome the mayor's qualified immunity by showing (1) that the mayor violated a statutory or constitutional right and (2) that the right was clearly established at the time of the challenged conduct. *Id.* We address only the second prong—whether the mayor violated clearly established law. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (explaining that courts have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first").

Eleventh Circuit, or the pertinent state supreme court. *Id.* Second, a plaintiff can point to "a broader, clearly established principle that should control the novel facts of the situation." *Id.* (quoting *Loftus*, 690 F.3d at 1204). Third, the plaintiff can show the defendant's conduct so obviously violated the Constitution that prior caselaw was unnecessary. *Id.*

Here the first method is plainly unavailable. Ms. Taylor has cited no decision of the United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court that establishes that the government engages in impermissible viewpoint discrimination when it blocks members of the public on its own social-media page. And we are aware of none.

That brings us to the second and third methods for establishing clearly established law. Ms. Taylor invokes the general First Amendment principle disfavoring government viewpoint-based restrictions on speech. But Ms. Taylor overlooks an equally well-established First Amendment principle applicable to a government's own speech. These two principles—the one Ms. Taylor relies on and the one she overlooks—are both part of the qualified-immunity analysis.

First, "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Discrimination against speech because of its message is presumed to be unconstitutional," and "[w]hen the government targets not subject matter, but particular views taken by

speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 828–29. In short, viewpoint discrimination is "an egregious form of content discrimination," and the government "must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.* at 829.

Second, the government's own speech—what the government chooses to say or not to say—is not subject to the same constraints as the government's restriction of private speech. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009); *Gundy v. City of Jacksonville*, 50 F.4th 60, 71 (11th Cir. 2022). Thus the government can make even viewpoint-based decisions on what to say or not to say.

How these two principles apply to a government's social-media account—for example, its Facebook page—was not clear in December 2016 and is not clear today.

On one view, a government page that allows members of the public to post comments is a limited public forum. A government can impose reasonable time, place, and manner restrictions on such a forum but "may not regulate speech based on its substantive content or the message it conveys." *Rosenberger*, 515 U.S. at 828; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Keister v. Bell*, 29 F.4th 1239, 1252 (11th Cir. 2022).

But on another view, a government page is government speech, even when others do some of the speaking. *See, e.g.,*

*Knight First Amend. Inst. at Columbia Univ. v. Trump*, 953 F.3d 216, 226–31 (2d Cir. 2020) (Park, J., dissenting from denial of rehearing en banc); *cf. Pleasant Grove*, 555 U.S. at 467–68. When a government chooses to speak—when, for example, it conducts a program addressing some issue or commemorating some holiday—the government may say what it wishes and may enlist speakers of its choice; doing so is not a free-speech violation. *See Pleasant Grove*, 555 U.S. at 467 ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."); *see also Gundy*, 50 F.4th at 71. Just because the government enlists speakers does not mean it must turn over the microphone to all others who wish to speak.

When the mayor blocked Ms. Taylor in December 2016, it was not clearly established whether a Facebook page of this kind was a limited public forum, governed by the first principle noted above, or instead constituted government speech, governed by the second. On the former view, blocking Ms. Taylor violated the First Amendment. On the latter view, blocking Ms. Taylor was permissible. The parties did not grapple with this substantive issue in their briefs, and we do not do so, either. What matters here is not how this issue would be resolved on the merits but only that the law was not clearly established—so the mayor has qualified immunity.

This result accords with the holdings of at least three other circuits. *See Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1183–84 (9th Cir. 2022) (holding elected school-board officials acted under color of law and violated the First Amendment by blocking critics

from the officials' social-media accounts but holding the officials had qualified immunity), *cert. granted*, No. 22-324, 2023 WL 3046119 (Apr. 24, 2023); *Novak v. City of Parma*, 932 F.3d 421, 434 (6th Cir. 2019) (holding police officers had qualified immunity for deleting social-media comments: "Courts have not reached consensus on how First Amendment protections will apply to comments on social media platforms"); *Wagschal v. Skoufis*, 857 F. App'x 18, 21 (2d Cir. 2021) (affirming qualified immunity for state senator who blocked citizen from page and hid comments).

This result also draws support, albeit limited, from the Supreme Court's recent grant of certiorari to address a related, though distinct, First Amendment issue: whether a public official's social-media activity constitutes state action when the official used the account to feature their job and communicate about job-related matters with the public but did not do so pursuant to any governmental authority or duty. *See Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158 (9th Cir. 2022), *cert. granted*, No. 22-324, 2023 WL 3046119 (Apr. 24, 2023); *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022), *cert. granted*, No. 22-611, 2023 WL 3046121 (Apr. 24, 2023). The grant of certiorari is an additional indication that the law in this general area remains unsettled. *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 331 (2015) ("The existence of a granted petition for certiorari demonstrates quite clearly that the question [at issue] was *un* settled at the time . . . ." ) (emphasis in original).

V

It was not clearly established in December 2016 that blocking a member of the public from posting on a government Facebook page in circumstances like these, even if based on viewpoint, violated the First Amendment. Thus, the mayor is entitled to qualified immunity, and the district court's denial of summary judgment as to the claims against the mayor in her individual capacity is reversed and this case is remanded for further proceedings consistent with this opinion.

**REVERSED**.